UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
x-------------------------------------------------------------x
MALIK THOMAS and MONIQUE THOMAS,                    COMPLAINT
      Plaintiffs,

      v.

THE CITY OF NEW YORK, OFFICER ALLISON                JURY TRIAL DEMANDED
CASANOVAS, OFFICER DOE1, OFFICER DOE2,
OFFICERS DOE 3-13, OFFICERS DOE 14-16,
ADVANCE PUBLICATIONS, INC. D/B/A THE
STATEN ISLAND ADVANCE, D/B/A SILIVE,
D/B/A STATEN ISLAND MEDIA GROUP &
MAURA GRUNLAND,
      Defendant.

x-------------------------------------------------------------x

Plaintiff MONIQUE THOMAS, for herself, individually, and as the parent and natural guardian of MALIK THOMAS by their attorney, Michael R. Horenstein, Esq., respectfully alleges the following, upon information and belief, as and for this Complaint against the Defendants:

## INTRODUCTION

1. This is a civil rights action for money damages and injunctive relief brought pursuant to 42 U.S.C. § 1981, 1983, 1985 and 1988, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, New York State Human Rights Law, New York City Human Rights Law, and the common law of the State of New York, against the defendants named in the above caption in both their individual and official capacities, and against the City of New York and The Staten Island Advance.

2. Over a prolonged period of time and through a series of incidents, police officers of the City of New York have targeted Monique Thomas and her son Malik Thomas (the "Thomases"), and engaged in a variety of police misconduct. As will is discussed in the ensuing paragraphs, the Thomases have been surveilled, followed, accosted and intimidated, the subject of a raid without good cause or warrant, ticketing, wrongful arrest and unlawful imprisonment. Members of the

police department conspired with Maura Grunland, a journalist, to defame and stigmatize Malik Thomas, and The Staten Island Advance has defamed him in its publication.

3. Plaintiffs seek compensatory and punitive damages, and an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## JURISDICTION

4. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

5. Under 28 U.S.C. § 1391(b) and (c), venue in the Eastern District of New York is proper.

## PARTIES

6. Plaintiffs Malik Thomas and Monique Thomas were at all material times residents of the City of New York, New York State, and Monique Thomas is of proper age and with capacity to sue, and, as guardian of Malik Thomas, has capacity to commence this lawsuit on his behalf under CPLR § 1201.

7. Police Officer Allison Casanovas, at all relevant times herein, was an officer, employee and agent of the New York Police Department ("NYPD"). Police Officer Casanovas is sued in her individual and official capacities.

8. Police Officer Doe1, Police Officer Doe2, and Police Officers Doe3-13, are police officers to be named in discovery and were, at all relevant times herein, officers, employees and agents of the NYPD. They are each sued in their individual and official capacities.

9. Defendant City of New York (hereinafter "The City") is and was at all relevant times a municipal corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York. The City operates the NYPD, a department or agency of Defendant City responsible for the appointment, training, supervision, promotion and discipline of officers and supervisory officers, including the Defendants.

10. Defendant Advance Publications, Inc., D/B/A as: The Staten Island Advance; D/B/A SILIVE; and D/B/A Staten Island Media Group, was, at all relevant times, a private company duly organized in the State of New York and conducting business in the State of New York.

11. Maura Grunland was at all relevant times an employee of Advance Publications, Inc.

## FACTUAL ALLEGATIONS

12. On or about February 1, 2016, Police Officer Allison Casanovas and two white male officers (Officer Doe1 and Officer Doe2) one plain clothes & one in uniform, entered upon the Thomases' home and property unrequested and unwanted. Malik Thomas, who was 15 years old at that time, answered the door. The officers entered the home by physically pushing past Malik who had stood at the doorway and asked them to wait outside the entrance. Officer Casanovas intimidated Malik and insisted "we should discuss these matters inside," as she entered. Officer Casanovas entered the living room first, followed by the two male officers. At that time Monique Thomas specifically demanded that they leave, stating that they were not invited to enter. At this time the female officer said that they looking for someone, but did not identify that person. Monique Thomas continued to request that the police officers leave and stated that she did not know who they were looking for, asserting that only she and her two sons resided at their home. She further explained to the officers that she was herself a domestic violence victim and in hiding. While Officer Casanovas was speaking with Monique Thomas, Police Doe1 and Police Doe2 continued to infiltrate further into the home, looking around and investigating, despite repeated calls by Monique Thomas for them to vacate the premises.

13. On or about February 11, 2016, at approximately 1:00 p.m., an unknown number of police officers of the 120th precinct and the 121st precinct, but in any case more than ten (and referenced herein as Officers Doe3–13), entered the Thomas home using Monique Thomas' key. The police had improperly obtained this key from a family member, whom Monique Thomas had sent on an errand to the store. That person was detained by a contingent of police officers,

searched and the key was taken from him. Concerned about his failure to return, Monique and her family began calling other family members. It later transpired that officers had held him across the street behind a clinic in a squad car.

14. Monique Thomas, her son Malik Thomas, along with two visitors, who had their baby with them, were handcuffed and held immobile in the Thomas home for more than four hours. During that time Officers Doe3-13 searched Monique Thomas and another female family member, exposing their bodies to a room full of male officers and male family members, including Malik Thomas, who was 15 at that time. The officers took Malik into a separate room, and searched & questioned him on three separate occasions. Similarly, another male family member was searched and questioned multiple times. The searched both individuals including the groin and buttocks areas, despite their protestations. The female family member was also taken into another room, where one of the officers began bullying and became verbally aggressive with her. At that point, one of the officers, designated here as Officer Doe3, picked up a chair and threw it.

15. On information and belief, Officers Doe3-13 did not have a warrant or good cause to enter onto the property. Despite protestations and demands from Monique Thomas and others over the four-hour period the officers refused to present a warrant, or identify themselves, or give any badge numbers. Over those four hours, the officers improperly read through the private papers of the family, including the medical papers of Monique Thomas.

16. Officers Doe3-13, whom the Thomases cannot identify by badge or name because of the deliberate actions of those officer to obscure and conceal their identity, destroyed and vandalized property over the course of this four-hour period. Much of the improper, wrongful and vandalizing actions by Officers Doe3-13 were done behind the backs or in separate rooms from the handcuffed Thomases. Officers Doe3-13 subsequently called yet other officers to come to the Thomas residence to see, vandalize, steal and play with the Thomases' property. No contraband or illegal materials were found other than a small amount of marijuana on the person of one of the male visitors.

17. After they had exhausted themselves in their illegal antics and search, an officer, Officer Doe4, told Monique Thomas to "shut her mouth" and not to say anything of this event, and threatened that they could do whatever they wanted in the future, indicating their impunity. Officers then pulled Malik Thomas to one side, returned the key, and finally left.

18. Shortly thereafter Monique Thomas contacted the Civilian Complaint Review Board ("CCRB") to report this police misconduct.

19. A short time after this raid upon the Thomases' home, Malik Thomas began and continues to be treated for Post-Traumatic Stress Disorder ("PTSD").

20. In the period after her report to the CCRB, the officers of the 121st Precinct blatantly harassed the Thomases, including: parking in front of their residence at all hours, surveilling, following, harassing Monique Thomas and anyone entering or leaving; pulling those visitors over to question them as they were driving away from the home; ticketing persons who come to the home.

21. On or about October 10, 2016, Malik Thomas was stopped by Police Officers Doe14-16 as a suspect in a crime that had occurred half an hour earlier in the neighborhood.  Upon information and belief, the Officers acted based upon Malik Thomas' color or race, and upon a broad and vague description, and without regard to the usual and proper criteria of police investigation.

22. Malik Thomas' cell phone was confiscated.

23. Malik Thomas was arrested, handcuffed, photographed, fingerprinted and was placed in a cell.

24. In arresting Malik Thomas, confiscating his cell phone, imprisoning him and causing him to be prosecuted, the police did not follow usual protocols and safeguards for investigation and arrest in arresting and charging Malik Thomas.

25. Malik Thomas was charged with armed robbery.

26. Malik Thomas remained in custody for more than two days.

27. On October 11, 2016, and again independently on October 17, 2016, The Staten Island Advance, a newspaper with a news website, through its reporter Maura Grunland, reported and published a

story that Malik Thomas, 16, was arrested in connection with an armed robbery that had occurred approximately half an hour earlier, where four suspects armed with a gun had stolen a man's cell phone. The story further alleges that Malik was in possession of the stolen property.

28. The news story was published in both the newspaper and on the website, and reads in pertinent part:

> "A 16-year-old has been arrested in an incident where four suspects armed with a gun allegedly stole a man's cell phone on the street in Port Richmond.
> Malik Thomas, 16, was nabbed at 9:26 p.m. Monday at Castleton and Sharpe avenues. The robbery occurred a couple of blocks away at about 9 p.m. Monday on the northwest corner of Treadwell and Harrison avenues, according to a spokesman for the NYPD's Deputy Commissioner of Public Information.
> The 52-year-old male victim told police that four strangers stopped him on the sidewalk and demanded his cell phone. A suspect lifted his shirt to reveal a firearm that was hidden underneath, the victim told police.
> The suspects then fled with the cell phone. Responding officers canvassed the neighborhood and caught Thomas with the cell phone, police said.
> Thomas is accused of acting in concert with others by blocking the victim's potential path of escape, the police spokesman said."

29. However Malik Thomas was not in possession of a stolen cell phone.

30. Upon information and belief, the Staten Island Advance and its reporter Maura Grunland, did not perform any investigation beyond communicating with members of the police department.

31. Upon information and belief, Malik Thomas, a juvenile, through his mother Monique Thomas, and his uncle and godfather, Joseph Hutchinson III, have repeatedly requested that the Staten Island Advance retract the story and remove it from its website, but they have refused to do so.

32. On January 25, 2017, just two days after Malik Thomas' above-mentioned charges are dropped, a ticket was issued to Malik Thomas for being in the local park after dusk, when it was still light out and other individuals were also in the park and were not ticketed.

## FIRST CLAIM

### Federal False Arrest Against Defendants Police Officers Doe 14-16

33. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

34. Defendants Police Officers Doe14-16 violated the Fourth and Fourteenth Amendments because they arrested Plaintiff Malik Thomas without probable cause.

35. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages set forth herein.

## SECOND CLAIM

### Common Law Defamation Per Se Against The Staten Island Advance, Maura Grunland, The City of New York, and Officers Doe14-16

36. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

37. The publication of the misrepresentations by the Staten Island advance amount to Defamation per se.

38. Defendants made defamatory statements about plaintiff, which tended to expose the Plaintiff to public hatred, contempt and ridicule.

## THIRD CLAIM

### Federal Conspiracy Claim Under 42 U.S.C. § 1983 and § 1985 Against Officers Doe14-16, Maura Grunland, and Advance Publications, Inc.

39. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

40. Defendants Officers Doe, Maura Grunland and Advance Publications, Inc., by publishing a false story and vilifying him, engaged in a joint venture to ensure that Malik Thomas would be

maliciously prosecuted, would be subject to criminal sanctions, and would denied the legal protections intended to shield juveniles in New York State.

41. Each of the Defendants knew or had reason to know that their actions or inactions, or failure to investigate, would deprive the Plaintiff of equal protection under the laws, yet the Defendants conspired to deprive such rights in violation of 42 U.S.C. § 1985.

42. As a direct result of said violations, the Plaintiff suffered tremendous emotional distress, embarrassment, humiliation, inconvenience, anxiety and frustration.

## FOURTH CLAIM

### Intentional Infliction of Emotional Distress Against The Staten Island Advance, Maura Grunland, Officers Doe14-16, and The City of New York

43. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

44. The actions of Officers Doe were purposeful and the consequences to Malik Thomas were intended and foreseeable.

45. Malik Thomas has suffered from PTSD. The subsequent publication of misrepresentations and lies have had a tremendous toll on an adolescent boy.

46. As a direct and proximate result of their publication, plaintiff sustained the emotional damages set forth herein.

## FIFTH CLAIM

### Negligent Infliction of Emotional Distress Against Officers Doe14-16, The Staten Island Advance, Maura Grunland, and The City of New York

47. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

48. In falsifying the facts surrounding Malik Thomas' arrest, reporting misrepresentations concerning alleged the alleged criminal conduct of acting in concert as part of an armed robbery, Defendants were negligent in the performance of their respective duties and responsibilities.

49. As a direct and proximate result of their publication, Plaintiff sustained the damages set forth herein.

## SIXTH CLAIM

### Federal "Stigma Plus" Under 42 U.S.C. § 1983 Against Officers Doe14-16, The Staten Island Advance, Maura Grunland, and The City of New York

50. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

51. Malik Thomas was defamed by the publication of a false story that he was in possession of property, a cell phone, stolen during an armed robbery.

52. As a direct and proximate result of the publication, Plaintiff was denied his equal protection of the laws that include the protections established under New York State's juvenile laws.

## SEVENTH CLAIM
### Punitive Damages

53. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

54. The acts of the defendants were malicious, willful, wanton and oppressive, and were motivated solely by a desire to harm the Plaintiff Monique Thomas and her son Malik, without regard for their well being and were based on a lack of concern and ill-will towards them, Such acts, therefore, therefore deserve and award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

    (a) Award compensatory damages against the defendants jointly and severally;

    (b) Award punitive damages against the individual defendants, jointly and severally;

    (c) Award costs and disbursements of this action to the Plaintiffs;

    (d) Award reasonable attorneys' fees and costs to the Plaintiffs pursuant to 28 U.S.C. § 1988;

(e)  Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

Dated:   New York, New York
         October 17, 2017

BY: _____
    Michael R. Horenstein

The Law Office of Michael R. Horenstein
437 East 80th Street, Ste no. 27
New York, NY 10075
(212) 517-7340
horenstein1@earthlink.net

TO: All Defendants