UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
x-------------------------------------------------------------x

| | |
|---|---|
| MALIK THOMAS and MONIQUE THOMAS, | COMPLAINT |
| Plaintiffs, | |
| v. | |
| THE CITY OF NEW YORK, OFFICER ALLISON CASANOVAS, OFFICER DOE1, OFFICER DOE2, OFFICERS DOE 3-13, OFFICERS DOE 14-16, ADVANCE PUBLICATIONS, INC. D/B/A THE STATEN ISLAND ADVANCE, D/B/A SILIVE, D/B/A STATEN ISLAND MEDIA GROUP & MAURA GRUNLUND, | JURY TRIAL DEMANDED |
| Defendant. | |

x-------------------------------------------------------------x

Plaintiff MONIQUE THOMAS, for herself, individually, and as the parent and natural guardian of MALIK THOMAS by their attorney, Michael R. Horenstein, Esq., respectfully alleges the following, on information and belief, as and for this Complaint against the Defendants:

**INTRODUCTION**

1. This is a civil rights action for money damages and injunctive relief brought pursuant to 42 U.S.C. § 1981, 1983, 1985 and 1988, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, New York State Human Rights Law, New York City Human Rights Law, and the common law of the State of New York, against the defendants named in the above caption in both their individual and official capacities, and against the City of New York and The Staten Island Advance.

2. Over a prolonged period of time and through a series of incidents, police officers of the City of New York have targeted Monique Thomas and her son Malik Thomas (the "Thomases"), and engaged in a variety of police misconduct. As is discussed in the ensuing paragraphs, the Thomases have been surveilled, followed, accosted and intimidated, the subject of a raid without good cause or warrant, ticketing, wrongful arrest and unlawful imprisonment. Members of the New York City Police Department ("NYPD") conspired with Maura Grunlund, a journalist, to

3. defame and stigmatize Malik Thomas, and The Staten Island Advance has defamed him in its publication.

4. Plaintiffs seek compensatory and punitive damages, and an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## JURISDICTION

5. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

6. Under 28 U.S.C. § 1391(b) and (c), venue in the Eastern District of New York is proper.

## PARTIES

7. Plaintiffs Malik Thomas and Monique Thomas were at all material times and are residents of the City of New York, New York State, and Monique Thomas is of proper age and with capacity to sue for herself, and, as guardian of Malik Thomas, had capacity to commence this lawsuit on his behalf under CPLR § 1201 while Malik Thomas was a minor child.

8. Malik Thomas is a resident of the City of New York, New York State, who was a minor child at all material times herein, but has now reached the age of majority and sues in his own capacity.

9. Plaintiffs Malik Thomas and Monique Thomas are African-American.

10. Police Officer Allison Casanovas, at all relevant times herein, was an officer, employee and agent of the New York Police Department ("NYPD"). Police Officer Casanovas is sued in her individual and official capacities.

11. Police Officer Doe1, Police Officer Doe2, and Police Officers Doe3-13, are police officers to be named in discovery and were, at all relevant times herein, officers, employees and agents of the NYPD. They are each sued in their individual and official capacities.

12. Defendant City of New York (hereinafter "The City") is and was at all relevant times a municipal corporation duly organized and existing pursuant to the laws, statutes and charters of the State of

New York. The City operates the NYPD, a department or agency of Defendant City responsible for the appointment, training, supervision, promotion and discipline of officers and supervisory officers, including the Defendants.

13. Defendant Advance Publications, Inc., D/B/A as: The Staten Island Advance; D/B/A SILIVE; and D/B/A Staten Island Media Group, was, at all relevant times, a private company duly organized in the State of New York and conducting business in the State of New York, (hereinafter, with Maura Grunlund, "The Advance Defendants" or "The Advance").

14. Maura Grunlund was at all relevant times an employee of Advance Publications, Inc.

## FACTUAL ALLEGATIONS

15. On or about February 1, 2016, Police Officer Allison Casanovas and two white male officers (Officer Doe1 and Officer Doe2) one in plainclothes and one in uniform, entered upon the Thomases' home and property unrequested and unwanted. Malik Thomas, who was 15 years old at that time, answered the door. The officers entered the home by physically pushing past Malik who had stood at the doorway and asked them to wait outside the entrance. Officer Casanovas intimidated Malik and insisted "we should discuss these matters inside," as she entered. Officer Casanovas entered the living room first, followed by the two male officers. At that time Monique Thomas specifically demanded that they leave, stating that they were not invited to enter. At this time the female officer said that they looking for someone, but did not identify that person. Monique Thomas continued to request that the police officers leave and stated that she did not know who they were looking for, asserting that only she and her two sons resided at their home. She further explained to the officers that she was herself a domestic violence victim and in hiding. While Officer Casanovas was speaking with Monique Thomas, Police Doe1 and Police Doe2 continued to infiltrate further into the home, looking around and investigating, despite repeated calls by Monique Thomas for them to vacate the premises.

16. On or about February 11, 2016, at approximately 1:00 p.m., an unknown number of police officers of the 120th precinct and the 121st precinct, but in any case more than ten (and referenced herein as Officers Doe3–13), entered the Thomas home using Monique Thomas' key. The police had improperly obtained this key from a family member, whom Monique Thomas had sent on an errand to the store. That person was detained by a contingent of police officers, searched and the key was taken from him. Concerned about his failure to return, Monique and her family began calling other family members. It later transpired that officers had held him across the street behind a clinic in a squad car.

17. Monique Thomas, her son Malik Thomas, along with two visitors, who had their baby with them, were handcuffed and held immobile in the Thomas home for more than four hours. During that time Officers Doe3-13 searched Monique Thomas and another female family member, exposing their bodies to a room full of male officers and male family members, including Malik Thomas, who was 15 at that time. The officers took Malik into a separate room, and searched & questioned him on three separate occasions. Similarly, another male family member was searched and questioned multiple times. The officers searched both individuals including the groin and buttocks areas, despite their protestations. The female family member was also taken into another room, where one of the officers began bullying and became verbally aggressive with her. At that point, one of the officers, designated here as Officer Doe3, picked up a chair and threw it.

18. On information and belief, Officers Doe3-13 did not have a warrant or good cause to enter onto the property.  Despite protestations and demands from Monique Thomas and others over the four-hour period the officers refused to present a warrant, or identify themselves, or give any badge numbers. Over those four hours, the officers improperly read through the private papers of the family, including the medical papers of Monique Thomas.

19. Officers Doe3-13, whom the Thomases cannot identify by badge or name because of the deliberate actions of those officers to obscure and conceal their identity, destroyed and vandalized property over the course of this four-hour period. Much of the improper, wrongful and

vandalizing actions by Officers Doe3-13 were done behind the backs or in separate rooms from the handcuffed Thomases. Officers Doe3-13 subsequently called yet other officers to come to the Thomas residence to see, vandalize, steal and play with the Thomases' property. No contraband or illegal materials were found other than a small amount of marijuana on the person of one of the male visitors.

20. After they had exhausted themselves in their illegal antics and search, an officer, Officer Doe4, told Monique Thomas to "shut her mouth" and not to say anything of this event, and threatened that they could do whatever they wanted in the future, indicating their impunity. Officers then pulled Malik Thomas to one side, returned the key, and finally left.

21. On information and belief, none of the above-mentioned actions by the police or their treatment of the Thomases conform to the standards and procedures for New York City Police conduct.

22. Shortly thereafter Monique Thomas contacted the Civilian Complaint Review Board ("CCRB") to report this police misconduct.

23. In the period after her report to the CCRB, the officers of the 121st Precinct blatantly harassed the Thomases, including: parking in front of their residence at all hours, surveilling, following, harassing Monique Thomas and anyone entering or leaving; pulling those visitors over to question them as they were driving away from the home; ticketing persons who come to the home.

24. On or about October 10, 2016, Malik Thomas was stopped by Police Officers Doe14-16 as a suspect in a crime that had occurred half an hour earlier in the neighborhood. On information and belief, the Officers acted based upon Malik Thomas' color or race, and upon a broad and vague description, and without regard to the usual and proper criteria of police investigation.

25. Malik Thomas' cell phone was confiscated along with his mother Monique Thomas' cell phone.

26. Malik Thomas was arrested, handcuffed, photographed, fingerprinted and was placed in a cell.

27. In arresting Malik Thomas, confiscating his cell phone and his mother's cell phone, imprisoning him and causing him to be prosecuted, the police did not follow usual protocols and safeguards for investigation and arrest in arresting and charging Malik Thomas.

28. Malik Thomas was charged with armed robbery.

29. Malik Thomas remained in custody for more than two days, unable to contact his mother, Monique Thomas, who was his legal guardian.

30. Monique Thomas, who became aware that her son was in custody, went to court to see him on October 11, 2016, but she was unable to speak with her son and was told that they had "lost the paperwork" such that he was not arraigned on that day.

31. From October 11, 2016, through October 17, 2016, The Staten Island Advance, a newspaper with a news website "SILive", through its reporter Maura Grunlund, and its editorial and executive staff, reported and published a number of differing versions of a news story to the effect that Malik Thomas, 16, was arrested by officers canvassing the neighborhood in connection with an armed robbery that had occurred approximately half an hour earlier, where four suspects armed with a gun had stolen an unnamed victim's cell phone. The story further alleges that Malik was in possession of the stolen property.

32. This untrue story was published in various forms on its website, SILive, and in its newspaper The Staten Island Advance.

33. On information and belief, The Staten Island Advance through its reporter Maura Grunlund published two articles defaming Malik Thomas on October 11th and October 13th titled: "Cops: Man robbed by 4 suspects with a gun; 1 teen nabbed" and "Teen free after being arraigned in armed robbery," respectively, in which they further stated that Malik had acted in concert with three unidentified and unapprehended suspects in robbing the victim; and that he had blocked the victim's path of escape. None of these assertions of criminal conduct were true.

34. Despite publishing that he had been "nabbed," which the Oxford Dictionary of English defines as to "catch (someone) doing something wrong," Malik Thomas was not involved in any robbery or criminal wrongdoing when Police Officers Doe14-16 arrested him. He was innocent.

35. Malik Thomas did not perform the villainous act attributed to him of "blocking the victim's path of escape."

36. On information and belief, the October 11th and October 13th articles also identified Malik Thomas, a minor child at the time, by name, age, and disclosed his street address with the exact house number, of which they are the sole residents.

37. On information and belief, the October 13th article asserted that the stolen property was an iPhone 5 and $10. The October 11th article stated that "Thomas was caught with the cell phone."

38. In fact, Malik Thomas was not taken into custody with an iPhone 5 or "caught" with any stolen cell phone, and this fact was easily ascertainable.

39. On information and belief, The Staten Island Advance and its reporter Maura Grunlund, did not perform <u>any</u> investigation beyond communicating with members of the New York City Police Department and with a spokesman for the NYPD's Deputy Commissioner of Public Information to The Advance Defendants who fed them this story.

40. On information and belief, The Staten Island Advance and its reporter Maura Grunlund relied upon the NYPD in making this report, as in innumerable reports, and are "in the pocket" of the police because it serves a number of their own interests, including that the Staten Island Community that The Advance serves is deeply interested in community issues and crime reporting; but also because the NYPD is an easy source for stories with very little cost or liability to The Advance; and because The Advance is particularly conservative and law-enforcement friendly.

41. On information and belief, the NYPD provided this information to the Advance Defendants because it serves their purposes to publicize the arrests of defendants in galvanizing public support for the NYPD; to sway public opinion concerning specific actions of the police; to

propagate the NYPD version of events that may otherwise be viewed negatively; and to cause defendants to become more isolated in the community; to intimidate defendants; to put pressure on defendants to take plea bargains, or to provide information on criminal activity.

42. On information and belief, the New York City Police Department, and the spokesmen and police officers with whom Maura Grunlund communicated, made material misrepresentations defaming Malik Thomas for these and related purposes.

43. On information and belief, Maura Grunlund and The Staten Island Advance acted as a conduit for the NYPD, amplifying and broadcasting their message and charges against Malik Thomas to the community and beyond, via the internet, that were untrue, defamatory and injurious, and creating danger and causing emotional distress.

44. On information and belief, Malik Thomas, who was at that time a juvenile, through his mother Monique Thomas, and his uncle and godfather, Joseph Hutchinson III, repeatedly requested that The Staten Island Advance retract the story and remove it from its website, but they refused to do so.

45. Mr. Hutchinson, who was working in England at that time, made multiple calls to executives of the newspaper and spoke with Maura Grunlund, the newspaper reporter who wrote the articles, and to Gail Lubin, the Content Director on October 12th, 2016, expressing concern for the harm that could come to him.

46. Mr. Hutchinson, who is an attorney, also disputed the factual allegations as early as October 12th and explained that Ms. Grunlund's reporting included false and defaming information. Mr. Hutchinson further stated that Malik had no criminal history, that the family was represented by legal counsel, and that the reputational harm to a minor child's future accused of such criminal conduct may be incalculable.

47. Mr. Hutchinson continued to contact and communicate with The Staten Island Advance through its employees, journalists, editors and executives. From London on the evening of Sunday, October 16, 2016, he sent an email to Brian Laline, the Executive Editor, and Maura Grunlund,

explaining that the Thomases were domestic violence survivors from Malik's father, who was a threat to Monique and Malik Thomas, and that by publishing his home address, the family was concerned for Malik and Monique's safety. In his October 16th email he expressed his concerns for his family's safety, explaining their profound distress at the harm that could come from publishing Malik's name and address and that "they are now terrified that Malik's father can find them because you printed Malik's name and address in your articles describing his arrest. I therefore must ask that you remove all identifying information about him from the articles IMMEDIATELY in order to avoid the risk of bodily harm or injury." He concluded that October 16th email by stating: "I already had concerns about Malik's future and the potential harm from publishing his name, but now there is concrete harm that might result from publishing his address. It would therefore be reckless not to remove the identifying information. Please do this now without forcing us to resort to legal action to solve this. As mentioned on numerous instances, time is of the essence."

48. When Mr. Hutchinson did not receive a response from Mr. Laline or Ms. Grunlund by morning New York time on October 17, 2016, he wrote to Deborah Nettingham, Senior Executive Administrator of The Advance, that **"**… Ms. Grunlund's article published false information because my nephew was not caught with the victim's cell phone. <u>This is easily ascertainable information from the arrest and court records</u>, but no retraction or updated information has been posted since bringing this to their attention.**"** [Emphasis added.]

49. Mr. Hutchinson explained in a subsequent email, later on October 17, 2016, to James Yates, the News Manager, Brian Laline, Executive Editor, and Maura Grunlund, that the article "includes false information that my nephew was caught with the victim's cell phone. He was not. And the failure to rectify this information is causing severe emotional distress to him and my family."

50. In numerous communications Mr. Hutchinson reminded The Advance of their ethical and legal obligations and, in the above-mentioned email, he states "I also point out that your newsroom is

not following proper ethical guidelines related to the identification of juveniles as promulgated by the Society of Professional Journalists to minimize harm."

51. The Society of Professional Journalists is the oldest organization of journalists, founded in 1909, and maintains an ethical code that Mr. Hutchinson directed The Advance Defendants to review, and that is particularly relevant to this case under the section "Minimize Harm," which reads in pertinent part: "Show compassion for those who may be affected by news coverage. Use heightened sensitivity when dealing with juveniles, victims of sex crimes, and sources or subjects who are inexperienced or unable to give consent. Consider cultural differences in approach and treatment." It also states journalists should "Avoid pandering to lurid curiosity, even if others do," and "Balance a suspect's right to a fair trial with the public's right to know. Consider the implications of identifying criminal suspects before they face legal charges."[1]

52. Finally, in a yet later email on October 17, 2016, Mr. Hutchinson warned that this matter was so serious and was causing such distress that "I refer you to all ethical guidelines published by your profession and inform you that we will pursue legal action against you and your unnamed sources if these articles are not removed by close of business today."

53. The Advance modified Maura Grunlund's October 11th and October 13th articles several times on October 17th, 2016, to remove some, but not all, information identifying Malik Thomas. The editors and executives of the company entered into an exchange of communications with Joseph Hutchinson, and were made aware of both the profound trauma and distress this story was causing Malik and Monique Thomas, and that there was easily available evidence supporting their counter-claim that Malik had had no part in the criminal conduct that The Advance "reported."

---

[1] www.spj.org/ethicscode.asp

54. The Two Advance articles listed "Malik Thomas, 16, of 238 Port Richmond Avenue" until the morning of October 17th; which was then changed to read "Malik Thomas, 16, of Port Richmond Avenue"; a further change was made that day to read "Malik Thomas, 16, of Port Richmond."

55. In the course of conversation with Joseph Hutchinson on October 17, 2016, Maura Grunlund told him that keeping the Thomases' street address without the house number was sufficient because "Port Richmond is a long street." Mr. Hutchinson could not convince her that that rationale would leave the Thomases in danger from a man who, despite an order of protection, was actively seeking to find them.

56. Finally, however, as a result of the above-noted communications pursued by Joseph Hutchinson with The Advance editorial staff, The Advance deleted the entire address on October 17, 2016 at 2:04 p.m. to read "Malik Thomas, 16."

57. The cumulative deletions were not minor alterations or mere revisions, but rather significant exercises of editorial judgment by editors the newspaper. They were the consequence of continued dialogue and intervention by Malik Thomas' family, and notably by Joseph Hutchinson III, in which he engaged Maura Grunlund, the journalist, Brian Laline, the Executive Editor, and the entire editorial staff.

58. These exercises in editorial judgment in identifying Malik Thomas constituted republications of the two stories with significant editorial changes, based upon new information provided by the Thomases' family.

59. But The Advance continued to portray Malik Thomas, a juvenile, as a suspect in a crime he did not commit with false and villainous details apparently provided from the NYPD, even after Joseph Hutchinson had provided verifiable exculpatory evidence that he importuned them to check or investigate, and after Malik Thomas was released on his own recognizance, and The Advance had reason to suspect the veracity of their sources. By removing some but not all of the material information identifying Malik Thomas, The Advance's articles, as updated and

republished on October 17th, continued to defame an innocent minor and imperil a terrified family.

60. Even without the street address, the articles localized Malik Thomas and his mother, Monique Thomas, to those who would find him, including his father, from whom they were in legitimate fear. It indicated that they now lived in Staten Island. And the first article stated that he was "nabbed… at Castleton and Sharpe Avenues," a short distance from their home.

61. On information and belief, The Advance Defendants treated The Thomases differently because of their race.

62. When The Advance finally deleted both articles in January of 2017, Content Director Gail Lubin acknowledged the lingering harm that could result from versions of Ms. Grunlund's articles that had been "cached" on other websites, but refused the responsibility of removing those cached articles and repairing that harm to a traumatized family: "I hear your concern about Google — FYI, I know that other folks have had success in getting Google to de-index pages that have been removed, you'd just have to contact them directly." Failure to remove the links to Ms. Grunlund's deleted articles from The Advance's Facebook page and other cached websites continued to cause significant harm to Malik Thomas, a vulnerable individual who had already been victimized by police misconduct and The Advance's reckless reporting.

63. On January 25, 2017, just two days after Malik Thomas' above-mentioned charges were dropped, a ticket was issued to Malik Thomas for being in the local park after dusk, when it was still light out and other individuals were also in the park and were not ticketed.

64. Malik Thomas has since early childhood had certain learning and emotional disabilities. However after the NYPD raid upon the Thomases' home, his false arrest, and the fear and trauma associated with The Advance articles, Malik Thomas began and continues to be treated for Post-Traumatic Stress Disorder ("PTSD"), and worsened disabilities, which has affected his ability to concentrate, interfered with his education, his ability to work, and to sleep, and has had other negative social and health effects.

65. Monique Thomas suffers physical disability and cannot walk without a cane. The concerns for her son in his arrest and detention, and for their safety in the subsequent publication of their address caused her panic and dread.

## FIRST CLAIM

### Federal False Arrest of Malik Thomas Against Defendants Police Officers Doe14-16

66. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

67. Defendants Police Officers Doe14-16 violated the Fourth and Fourteenth Amendments because they arrested Plaintiff Malik Thomas without probable cause.

68. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages set forth herein.

## SECOND CLAIM

### Common Law Defamation Per Se of Malik Thomas Against The Staten Island Advance, Maura Grunlund, The City of New York, and Officers Doe14-16

69. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

70. Officers Doe 14-16, The City of New York, defamed Malik Thomas by accusing him of committing the crime of robbery, of having the stolen items on his possession, and of acting as a villain and criminal by blocking the path of escape of a victim.

71. The further publication of these heinous accusations by The Advance Defendants in their newspaper and in two on-line articles amount to Defamation per se, also.

72. Defendants made defamatory statements about plaintiff, which tended to expose the Plaintiff to public hatred, contempt and ridicule.

## THIRD CLAIM

### Intentional Infliction of Emotional Distress of Malik Thomas and Monique Thomas Against The Staten Island Advance, Maura Grunlund, Officers Doe14-16, and The City of New York

73. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

74. The actions and inactions of Officers Doe14-16 were purposeful and the consequences to Malik Thomas were intended and foreseeable.

75. The act of continuing to arrest, hold, arraign, and prosecute Malik Thomas in the face of exculpatory evidence was decisional and intentional.

76. Malik Thomas has suffered from PTSD, learning and emotional disabilities. The subsequent publication of misrepresentations and lies have had a tremendous toll and emotional injury on him as an minor child.

77. The publication of the Thomases' address was deliberate and unconscionable, and caused both Malik Thomas and Monique Thomas to be terrorized and suffer profound emotional distress.

78. As a direct and proximate result of their publication, both Monique and Malik Thomas sustained the emotional damages set forth herein.

## FOURTH CLAIM

**Negligent Infliction of Emotional Distress of Malik Thomas and Monique Thomas Against Officers Doe14-16, The Staten Island Advance, Maura Grunlund, and The City of New York**

79. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

80. Officers Doe14-16 either in failing to investigate or in falsifying the facts surrounding Malik Thomas' arrest, negligently inflicted emotional distress as a direct and foreseeable result of their actions, and were negligent in the performance of their respective duties and responsibilities.

81. The Advance Defendants were put on notice that Malik Thomas, a minor child, would suffer tremendous harm and that both Monique and Malik Thomas were terrified to be discovered by Malik Thomas' father.

82. The Advance Defendants are journalists with a duty to perform reasonable investigation, especially in light of evidence laid at their feet, but they failed or refused to do so.

83. The continued publication and republication of these stories was negligent.

84. As a direct and proximate result of these failure by the Officers Doe14-16, the City of of their publication, and by the Advance Defendants, Plaintiffs sustained the damages against set forth herein.

## FIFTH CLAIM

### Federal Conspiracy Claim Under 42 U.S.C. § 1983 and § 1985 Against Officers Doe14-16, City of New York, Maura Grunlund, and Advance Publications, Inc.

85. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.
86. Defendants Officers Doe14-16 falsely arrested and detained Malik Thomas.
87. Officers Doe14-16, the spokesman for the NYPD's Deputy Commissioner of Public Information, the City of New York then falsely charged him with robbery and other felonies, and sought to suppress and hobble his ability to defend himself, to intimidate and cow him.
88. Maura Grunlund and Advance Publications, Inc. worked hand-in-glove by publishing false stories and vilifying him, relying solely on the NYPD without any independent verification, and ignoring relevant evidence, and thereby conspired in a joint venture with the NYPD and the City to ensure that Malik Thomas would be maliciously prosecuted, would find no sympathy in public opinion, would be subject to criminal sanctions, and would be denied the legal, equitable and other protections intended to shield juveniles in New York State.
89. Each of the Defendants knew or had reason to know that their actions or inactions, or failure to investigate, would deprive the Plaintiff of equal protection under the laws and due process, by bolstering the prosecution of Malik Thomas for crimes he did not commit, depriving him in the court of public opinion of the right to be considered innocent until proven guilty. Yet the Defendants did conspire to deprive Malik Thomas of such rights in violation of 42 U.S.C. § 1985.
90. Each of the Defendants knew or had reason to know that their actions or inactions, or failure to investigate, would obstruct justice, give cover to a wrongful arrest and prosecution, and serve to

intimidate a party, in that Malik Thomas, as a sixteen-year-old boy was easily intimidatable, and he was in fact intimidated.

91. As a direct result of said conspiracy, the Plaintiff was deprived of the equal protection of laws, and was intimidated for the purposes of obstructing justice.

## SIXTH CLAIM

**Federal "Stigma Plus" Under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 Against Officers Doe14-16, The Staten Island Advance, Maura Grunlund, and The City of New York**

92. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

93. Malik Thomas was defamed by allegations made by the arresting officers Doe14-16, which was then propagated and released by the spokesman for the NYPD's Deputy Commissioner of Public Information to The Advance Defendants.

94. The Advance Defendants amplified those falsehoods through their publications, causing Malik Thomas to be defamed.

95. Malik Thomas' was stigmatized and defamed in that he was alleged to be in possession of stolen property, an iphone 5, that he acted in concert in a robbery, and that he prevent the escape of a crime victim.

96. Those false allegations conjoined to undermine his liberty interests while he was arrested, held, and later prosecuted for a crime he did not commit.

97. As a direct and proximate result of the publication, Plaintiff was denied his equal protection of the laws, that include the protections of a fair trial, established under New York State's juvenile laws. Defendants made defamatory statements about plaintiff, which tended to expose the Plaintiff to public hatred, contempt and ridicule.

## SEVENTH CLAIM
### Punitive Damages

98. Plaintiff repeats and realleges each and every allegation as if set forth more fully herein.

99. The acts of the defendants were malicious, willful, wanton and oppressive, and were motivated solely by a desire to harm the Plaintiff Monique Thomas and her son Malik, without regard for their well being and were based on a lack of concern and ill-will towards them. Such acts, therefore, therefore deserve and award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

(a) Award compensatory damages against the defendants jointly and severally;

(b) Award punitive damages against the individual defendants, jointly and severally;

(c) Award costs and disbursements of this action to the Plaintiffs;

(d) Award reasonable attorneys' fees and costs to the Plaintiffs pursuant to 28 U.S.C. § 1988;

(e) Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

Dated:   New York, New York
         July 20, 2018

BY: _____
    Michael R. Horenstein

The Law Office of Michael R. Horenstein
437 East 80th Street, Ste no. 27
New York, NY 10075
(212) 517-7340
horenstein1@earthlink.net

TO: All Defendants